```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

NANCY FEARON-HALES,

        Movant,

    -v-                                              No.  08 Civ. 6547 (LTS)(FM)

UNITED STATES OF AMERICA,

        Respondent.

--------------------------------------------------------x
```

## OPINION AND ORDER

On July 23, 2008, Nancy Fearon-Hales ("Fearon-Hales" or "Movant"), proceeding pro se, filed this motion (the "Motion") pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the sentence imposed on her by this Court. The Court has jurisdiction of Fearon-Hales's claims pursuant to 28 U.S.C. § 1331. Movant asserts various arguments challenging the integrity of the trial and the fairness of the sentence. Movant also asserts that she received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Among her ineffective assistance of counsel claims is a claim premised upon her attorney's alleged recommendation that she reject a plea offer purportedly made by the Respondent.[1]  By order of the Court, Movant, Respondent, and Movant's trial and appellate counsel, Alan Seidler, Esq. ("Defense Counsel" or "Seidler"), expanded the record by providing affidavits regarding this allegation. The Court has thoroughly considered all of the parties' submissions. For the following reasons, the Motion is dismissed in its entirety.

---

[1] Although Movant's claim regarding the alleged plea offer was not raised in the initial motion, but rather was asserted for the first time in Movant's unsworn reply brief, the Court will consider the claim in light of, inter alia, Movant's status as a pro se litigant. See Cole v. U.S., No. 04 Civ. 21716, 2005 WL 217019, *5 (S.D.N.Y. Jan. 27, 2005).

BACKGROUND

On March 11, 2004, a grand jury indicted Fearon-Hales on one count of conspiracy to import more than one kilogram of heroin into the United States (Case No. 04 Cr. 231, docket entry no. 1), a charge that carries a mandatory minimum sentence of ten years' imprisonment, 21 U.S.C. § 960(b)(1)(A).  A superseding indictment dated March 31, 2005, corrected a typographical error in the original indictment but did not alter the crime charged in any material respect.  (Case No. 04 Cr. 231, docket entry no. 16.)  On April 13, 2005, a jury convicted Fearon-Hales of one count of conspiracy to import heroin in violation of 21 U.S.C. § 963.  The jury also found that the importation conspiracy involved more than one kilogram of heroin.  On October 21, 2005, the Count sentenced Fearon-Hales to a prison term of 151 months, to be followed by a five-year term of supervised release.  Fearon-Hales appealed the judgment, which was affirmed by the Second Circuit on May 21, 2007.  Familiarity with the prior proceedings and decisions is presumed.

*The Evidence Presented at Trial*

In 2003, after Alexander Becker ("Becker") provided an unsolicited confession revealing his participation as a drug courier in a drug-smuggling conspiracy, German law enforcement authorities began court-authorized monitoring of telephone calls among a drug courier named Nak Kusi ("Kusi"), Becker, and Fearon-Hales.  Shortly thereafter, Kusi was arrested at an airport in Germany while in possession of less than one kilogram of heroin.  The court-authorized intercepts revealed that, shortly before his arrest, Kusi spoke with Fearon-Hales.

At Fearon-Hales's trial, the Government's evidence included testimony from Becker and Kusi, records of wire transfer payments that corroborated the Government's allegations, and

intercepted telephone conversations implicating Fearon-Hales in the drug conspiracy.[2]  Kusi testified, from a courtroom in Germany, through an interpreter via a two-way teleconferencing system.  On direct examination, Kusi explained that a woman named "Nancy," whom he identified as Fearon-Hales, had instructed him to meet with a supplier and transport drugs that were hidden in the soles of shoes.  The testimony of both Becker and Kusi established that the men had met with Fearon-Hales on more than one occasion.  On cross-examination, defense counsel sought to raise an inference that Kusi was a biased witness motivated by the possibility of a reduced sentence in Germany, a non-prosecution agreement from United States authorities, and the release of his girlfriend from custody.

The Government introduced evidence of wire transfers from Kusi to an address in London that Fearon-Hales confirmed was her home address.  The Government also introduced evidence of telephone conversations between Kusi and a person whom he addressed as "Auntie," concerning the drug conspiracy.  Kusi identified "Auntie" as Fearon-Hales and the conversations involved phone numbers linked to Fearon-Hales.  The jury was able to compare the voice alleged to be Fearon-Hales's in these conversations with a recording of Fearon-Hales's voice obtained while she was in pre-trial detention.  In addition, Fearon-Hales's passport was admitted into evidence, which revealed that she had traveled to New York at the same times that Kusi and Becker traveled to New York to execute drug transactions, allegedly for Fearon-Hales, in 2002 and 2003.

Fearon-Hales did not testify, call any witnesses, or present any other evidence.  Defense counsel considered calling Fearon-Hales's brother, Louis Dugbartey, to testify in her defense but ultimately chose not to do so.  After a jury trial, Fearon-Hales was convicted of the sole count of

---

[2] At the time of trial, Fearon-Hales was the subject of an outstanding warrant for her arrest in Ghana for her role in a heroin shipment seized by Ghanaian officials in 2001.  The Court permitted the evidence of the arrest warrant to be introduced at trial for a limited purpose.

conspiracy to import more than one kilogram of heroin into the United States, in violation of 21 U.S.C. § 963.

*The Sentencing*

Fearon-Hales's conviction carried with it a mandatory minimum sentence of 120 months, pursuant to 21 U.S.C. § 841(b)(1)(A). The applicable Sentencing Guidelines recommended a term of imprisonment between 151 to 188 months, based on an offense level of 34 and Criminal History Category I. The offense level was determined by: (1) the amount of heroin involved in the offense, which established a base offense level of 32; and (2) Fearon-Hales's supervisory role in the organization, which resulted in a two-level increase. The Court sentenced Fearon-Hales to a term of 151 months' imprisonment (the low end of the applicable Guidelines range) to be followed by a five-year term of supervised release. The Court also imposed the mandatory $100 special assessment.

*Fearon-Hales's Appeal*

Fearon-Hales appealed her conviction to the United States Court of Appeals for the Second Circuit asserting, inter alia, that: (1) the testimony of Government witness Kusi, who testified via teleconference from Germany, was impermissibly coached and therefore inadmissible; (2) the sentence imposed was unreasonable; and (3) the Court's decision not to grant a downward departure on the basis of the sentences given to Fearon-Hales's German accomplices was plain error.[3] The Court of Appeals rejected Fearon-Hales's claims and affirmed the judgment of the District Court. United States v. Fearon-Hales, 224 Fed. App'x 109 (2d Cir. 2007). The Supreme Court denied a petition for a writ of certiorari on October 1, 2008.

---

[3] On appeal, Fearon-Hales also asserted that: (1) the verdict was not supported by sufficient evidence proving her guilt beyond a reasonable doubt; and (2) the jury was not competent to compare the voice recordings offered in evidence. These claims are not at issue in the instant motion.

D<small>ISCUSSION</small>

In order to prevail under 28 U.S.C. § 2255, Movant must demonstrate that: (1) her sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C.A. § 2255.  Generally, if a movant asserts a claim in a Section 2255 motion that she failed to raise on direct appeal, the claim is procedurally barred and the district court may not consider it.  Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).  This rule, however, does not apply to ineffective assistance of counsel claims.  See Massaro v. United States, 538 U.S. 500, 504-05 (2003).

The Sixth Amendment guarantees the right to "the effective assistance of counsel," U.S. Const. amend. VI,  McMann v. Richardson, 397 U.S. 759, 771 (1970), and Strickland v. Washington, 466 U.S. 668 (1984), sets forth the elements of the ineffective assistance analysis.  Strickland establishes a two-pronged test that must be satisfied in order for a movant to prevail on a claim for ineffective assistance.  A movant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) prejudice resulted from counsel's deficient performance.  Id. at 694.  With respect to the first prong, a movant must demonstrate that counsel "committed errors so serious that [he] was not functioning as 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  The Court must make "every effort … to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Bell v. Miller, 500 F.3d 149, 156 (2d Cir. 2007).  The jury's ultimate decision not to find in a defendant's favor does not indicate that counsel's actions fell outside of the wide range of professionally reasonable assistance.  See U.S. v. Salameh, 16 Fed. App'x 73, 77 (2d Cir. 2001) ("lack of success of a chosen strategy does not warrant

judicial second-guessing"). With regard to the prejudice prong of the analysis, a movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. Unlike the determination of counsel's performance under the first prong, a finding of prejudice "may be made with the benefit of hindsight." Lockhart v. Fretwell, 506 U.S. 364, 371-72 (1993). Further, the Court must consider "the totality of the evidence before judge or jury" to determine counsel's alleged deficiencies. Strickland, 466 U.S. at 695. If a movant fails to make a sufficient showing on either prong, the statutory inquiry ends; the Court need not further address the merits of the other prong. Id. at 697.

Movant asserts that her trial counsel provided ineffective assistance by: (1) failing to object to the alleged coaching of the prosecution's principal witness; (2) failing to cross-examine the Government's principal witness sufficiently; (3) failing to introduce Movant's travel and business records into evidence; (4) failing to call Movant's brother as a defense witness; (5) refusing to allow Movant to testify at trial; and (6) failing to adequately inform Movant of the likelihood of conviction and its likely consequences. Movant additionally asserts that her conviction and sentence should be vacated or corrected on the grounds that: (7) the prosecution's principal witness was improperly coached; (8) her sentence was unreasonable under the Sentencing Guidelines; and (9) her sentence significantly and arbitrarily deviated from that of her co-conspirators.

### *Failure to Object to the Alleged Coaching of the Prosecution's Principal Witness*

Movant claims that her counsel's failure to object to the alleged coaching of a Government witness, Kusi, constitutes ineffective assistance. The trial record, however, reflects that defense counsel raised an objection upon noticing that the Government witness, Kusi, was testifying

with the aid of counsel in Germany.  During the cross-examination, counsel's observation directly led to the following colloquy:

| | |
|---|---|
| Defense Counsel: | Your Honor, is that the judge who is helping [Kusi] with cross examination? |
| District Court: | I believe that's his lawyer, actually. |
| Defense Counsel: | I would object to it. |

(Trial Transcript ("Tr. Trans.") 303.)  Movant's claim predicated upon counsel's failure to object to the alleged coaching of the Government's witness is therefore contradicted by the record.  Furthermore, in light of the Second Circuit's ruling on direct appeal that the coaching issues went to the weight of the evidence, which was properly considered by the jury, Movant cannot demonstrate that she suffered the requisite prejudice on account of any failure to object.  Accordingly, this claim is dismissed.

*Failure to Introduce Movant's Travel and Business Records*

Movant alleges that she made clear to Defense Counsel that she wished to introduce certain travel and business records into evidence and his failure to do so rendered his assistance constitutionally ineffective.  However, actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance without a showing that counsel's performance was deficient and prejudiced the movant.  Strickland, 466 U.S. at 689-94.  Movant has not described the particular records that her counsel allegedly failed to introduce nor has she established that such records would have aided in her defense.[4]  Accordingly, with respect to this claim, Movant has failed

---

[4]   It appears that at least the documents that Movant allegedly urged counsel to introduce may have been introduced by the Government at trial.  Such evidence included Movant's passport and records of items purchased at various locations worldwide.  (Tr. Trans. 132-33.)

to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Bell, 500 F.3d at 149.

### *Failure to Cross-Examine the Government's Principal Witness Sufficiently*

Movant argues that Defense Counsel failed to cross-examine Kusi, the Government's principal witness, effectively. However, the trial transcript demonstrates that Defense Counsel conducted a thorough cross-examination exploring the witness's cooperation with the Government, his attendant incentives to testify against Movant, his indictment for heroin trafficking, and his own admissions regarding misleading law enforcement during the investigation. (Tr. Trans. 293-97, 308-09.) Trial counsel also devoted ample attention in his closing argument to attacking Kusi's credibility, specifically referring to Kusi's testimony as "self-serving lies." (Id. at 387.) The Court concludes that counsel's cross-examination of Kusi was "within the wide range of reasonable professional assistance," Bell, 500 F.3d at 156, and accordingly, Movant's claim is dismissed insofar as it challenges counsel's cross-examination.

### *Failure to Call a Particular Defense Witness to Testify*

Movant also alleges that Defense Counsel's failure to call her brother, Louis Dugbartey, to testify as a defense witness constitutes ineffective assistance of counsel. Movant has submitted Mr. Dugbartey's sworn statement that Defense Counsel "requested that [he] testify on behalf of [his] sister" but after "wait[ing] outside the courtroom prepared to testify. . . [Defense Counsel] refused to allow [him] to testify." (Movant's Response, Ex. C, Dugbarty Aff.) However, Movant has not demonstrated how the witness's testimony would have proven beneficial to her defense and, accordingly, she has failed to establish that any prejudice resulted from Defense Counsel's decision. This claim therefore must be dismissed. Strickland, 466 U.S. at 694.

*Refusal to Allow Movant to Testify at Trial*

Movant faults counsel for allegedly refusing to let her take the stand in her own defense. Movant has proffered that "[she] asked to testify and was not allowed by attorney." (Movant's Response, Ex. D, Fearon-Hales Aff.) It is the duty of the "lawyer to be a professional advisor and advocate," In re Shargel, 742 F.2d 61, 62-63 (2d Cir. 1984), without commandeering the client's ultimate decision-making power. See Jones v. Barnes, 463 U.S. 745, 753 (1983) ("It is . . . recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal") (emphasis added). Defense Counsel has proffered that:

> I regularly had conversations with Fearon Hales [sic] about her potential trial testimony, that she had a right to testify on her own behalf, and that unless she agreed to testify, she could not be compelled to give testimony at her trial, or any pretrial proceeding. During the course [of] the Fearon Hales trial I regularly repeated those conversations of rights with her. In the end, the decision was hers to make, and she decided that she did not want to testify on her own behalf at her trial. Of that I have no doubt.

(Government's Memorandum of Law, Ex. B., Seidler Aff., ¶¶ 1-2.) The Court need not make a finding as to which proffer it finds credible, however, because Movant has failed to show how she was prejudiced by her abstention from testifying.

Analysis of the prejudice prong traditionally reflects the strength of the Government's case at trial. See Strickland, 466 U.S. at 695 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"). The jury was presented with substantial evidence of Movant's guilt and Movant has not shown that her testimony could have changed the proceeding's outcome. Movant only states that, had she testified, "[she] would have told the jury her side of the story. She would have testified that the

alleged [Ghanaian] warrant was not in fact true . . . " This assertion is inadequate to support a finding that Movant was prejudiced because she did not testify.  In fact, Movant's testimony could have undermined Defense Counsel's principal strategy, which was to invite the jury to compare voice recordings of Movant made while she was in custody with the voice of the woman on the intercepted communications.  Movant's testimony would have provided the jury with another exemplar to employ in its determinations as to whether the voice on the intercepted communications was Movant's.  Moreover, Movant's testimony may have opened the door for the Government to question her with respect to the charges underlying a 2001 arrest warrant issued for her in Ghana, which the Government had only been permitted to use for the limited purpose of establishing the reason for Movant's reluctance to travel to Ghana.[5]  (Tr. Trans. 82-84.)  In light of the strength of the evidence presented by the Government, the possibility that Movant's testimony might have further strengthened the Government's case, and Movant's failure to demonstrate how her testimony would have undermined the Government's case, the Court concludes that Movant has not met her burden of demonstrating a reasonable probability that the result of the proceeding would have been different had she testified.  Strickland, 466 U.S. at 694.  Accordingly, this claim is dismissed.

*Failure to Advise Movant to Accept a Purported Plea Offer*

Ineffective assistance of counsel claims arising out of the contemplation and negotiation of plea bargains are also subject to the two-pronged Strickland test.  See Wright v. Van Patten, 552 U.S. 120, 124 (2008); see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (Defense attorneys have a "constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government.").  Counsel's failure to inform the

---

[5]   The Government averred that it would not allude to the charge in Ghana "with the caveat [that] if Ms. Fearon-Hales were to take the stand, we should have an application to go down that line."  (Tr. Trans. 80-81.)

client of the existence of a plea offer or failure to advise the client sufficiently with respect to such a plea offer may constitute ineffective assistance.  United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) ("defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results at trial" because "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision of whether to plead guilty").  To prevail on such an ineffective assistance claim, Movant must demonstrate that: (1) counsel failed to communicate the plea offer altogether or that counsel failed to provide sufficient advice regarding the plea and sentencing exposure; and (2) there is a reasonable probability that, but for counsel's deficient performance, the Movant would have accepted the plea offer.  See Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000).  The Movant, however, must provide some credibly objective evidence; that is, something more than simply "self serving, post-conviction testimony" regarding her likely decision had counsel properly informed her.  Gordon, 156 F.3d at 380-81.  "Objective evidence may include a disparity between the plea offers and the actual sentence, and whether the plea offers were stated in Movant's presence in open court."  Osorio v. Conway, 496 F. Supp. 2d 285, 303 (S.D.N.Y. 2007).

       Movant alleges that the Government offered to recommend a sentence of 70 months' imprisonment if Movant would plead guilty and that, had she known she could be sentenced to 151 months' imprisonment upon conviction at trial, she would have accepted the offer.  She alleges that the 70-month recommendation offer was made in 2005.  However, both the Government and defense counsel, in sworn submissions, deny the existence of such a plea offer.  Morever, both the original indictment, dated March 11, 2004, and the superseding indictment, dated March 31, 2005, charged Movant with conspiracy to import heroin and specified a quantity of one kilogram, in citing 21 U.S.C. §§ 812, 952 and 960(a)(1), a charge which carried a mandatory minimum sentence of ten

years' imprisonment, 21 U.S.C. § 960(b)(1)(A). Both the Government and defense counsel have proffered that Movant never provided to the Government all the information and evidence she had concerning her drug trafficking activities, which is required before any defendant can become "safety-valve" eligible to receive a sentence less than the mandatory minimum. 18 U.S.C. § 3553(f)(5). The Court thus concludes that Movant's allegation that the Government offered her a plea agreement that included a recommended sentence of 70 months' imprisonment is inherently implausible and therefore not credible, in light of the undisputed evidence that at all relevant times Movant was charged with a crime carrying a ten-year mandatory minimum sentence and that Movant never completed a proffer session. See, e.g., Percan v.United States, 294 F. Supp. 2d 505, 512 (S.D.N.Y. 2003). Accordingly, this claim is dismissed.

*Movant's Additional Claims*

Movant also asserts that her conviction and sentence should be vacated or corrected on the grounds that: (1) the prosecution's principal witness was improperly coached; (2) her sentence, with respect to the sentencing guidelines' procedures, was unreasonable; and (3) her sentence significantly and arbitrarily deviated from that of her co-conspirators. All three of these claims were addressed on direct appeal by the United States Court of Appeals for the Second Circuit. It is well settled that a Section 2255 motion cannot be used to relitigate questions which were raised and considered on direct appeal. Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992). In order to overcome this procedural bar, a Movant must establish that either: (1) the claim rests upon a different legal ground than the one previously raised, United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009); (2) "there has been an intervening change in the law and the new law would have exonerated the defendant had it been in force before the conviction was affirmed on appeal," Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980); (3) new evidence has been made available, United States

v. Becker, 502 F.3d 122, 127 (2d Cir. 2007); or (4) revisiting the claim is necessary to prevent injustice. Id. Movant has not demonstrated that any these exceptions apply to the instant case and, accordingly, Movant is not entitled to relitigate these claims.

Movant also asserts that the District Court violated her constitutional rights by considering conduct that "was not charged in the indictment and was not admitted or agreed to by Petitioner" in determining her sentence. This argument is without merit: neither the U.S. Constitution, nor the Federal Rules of Criminal Procedure, nor Title 18 of the United States Code, prohibit the District Court from considering any of the information it relied upon in determining Movant's sentence. See 18 U.S.C.A. § 3661 (West 2000) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.").

## CONCLUSION

For the foregoing reasons, an evidentiary hearing is not warranted and the motion for relief pursuant to 28 U.S.C. § 2255 is denied. Because Movant has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962). The Clerk of Court is respectfully requested to enter judgment denying the motion and close this case.

SO ORDERED.

Dated: New York, New York
August 9, 2010

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copies sent by mail to:

    Nancy Fearon-Hales, 52169-054
    FCl Danbury
    Route 37
    Danbury, Connecticut 06811

    B. Alan Seidler, Esq.
    580 Broadway, Room 717
    New York, New York 10012

    Virginia Chavez Romano, Esq.
    United States Attorney's Office, S.D.N.Y.
    One Saint Andrew's Plaza
    New York, New York 10007